**SIGNED THIS: May 12, 2011**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| IN RE: | ) | |
|---|---|---|
| | ) | |
| Erin R. VanDyke, | ) | No. 10-82902 |
| | ) | |
| Debtor. | ) | |

**OPINION**

This matter is before the Court on the Chapter 13 Trustee's (TRUSTEE) objection to confirmation of the Chapter 13 plan filed by Erin R. VanDyke, the Debtor (DEBTOR), asserting that the DEBTOR is not providing all of her projected disposable income to pay unsecured creditors as required by section 1325(a)(1)(B). Specifically, the TRUSTEE contends that the DEBTOR has incorrectly calculated her projected disposable income by claiming an additional deduction of $200 (sometimes referred to as the old-car deduction) for transportation operating expense on line 27, based on the age and mileage of her vehicle. The issue presented to the Court is whether a Chapter 13 debtor is allowed an additional operating expense of $200 per vehicle when the vehicle is over six years old and/or the vehicle has over 75,000 miles.

**FACTS**

The relevant facts are not in dispute. The DEBTOR filed a Chapter 13 petition on September 17, 2010. She is married, but her spouse did not join in her petition, nor has he filed a separate petition. The DEBTOR owns two vehicles: a 2008 Pontiac G6, which is subject to a lien in favor of CEFCU and an unencumbered 1994 Chevrolet Beretta with 145,000 miles, valued at $300. The DEBTOR notes that the Beretta does not run.

As part of her petition, she was required to file a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, Official Form 22C. According to Form 22C, the DEBTOR'S annualized current monthly income for purposes of section 1325(b)(3) is $72,074.04, placing her above the applicable median income for this geographic area based on a family of the DEBTOR'S size and requiring her to calculate her deductions from income in accordance with Form 22C, in order to determine her monthly disposable income. The DEBTOR deducted an ownership expense of $313.55 for her Pontiac. This figure was calculated by subtracting her average monthly car payment of $182.45 from the Local Standard of $496. She also deducted an ownership expense of $496 for the Beretta and an operating expense based on two vehicles of $420.

The Chapter 13 plan filed by the DEBTOR proposes monthly payments in the amount of $355 for a period of sixty months. The plan proposes to pay CEFCU for its claim of $9,795 secured by her 2008 Pontiac G6, through the plan. Under the plan, unsecured creditors would receive a distribution of $4,894, or approximately 12%.

At the confirmation hearing held on January 24, 2011, the TRUSTEE objected to Form 22C, based on the ownership deduction taken for the unencumbered Beretta and on the deduction taken for contributions to a retirement plan, which he believed to be

2

excessive. The DEBTOR filed an amended Form 22C, eliminating the ownership expense for the Beretta, but increasing the operating expense by $200, to $620.[1] The qualified retirement deduction taken on Line 55 was reduced from $811.46 to $400.00. As revised, the DEBTOR'S monthly disposable income dropped to negative $313.58. At the continued confirmation hearing on February 28, 2011, the TRUSTEE continued to object, asserting that the DEBTOR should not be allowed to claim the additional operating expense of $200 for the Beretta and questioning an increase in the deduction for taxes taken as a martial deduction.[2] The Court took the issue of the entitlement of an additional operating expense under advisement and post-trial briefs were submitted by the parties.

**ANALYSIS**

In order for a Chapter 13 plan to be confirmed over an objection, a plan must provide that all of the debtor's projected disposable income to be received in the applicable commitment period will be used to satisfy the claims of unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). For an above median debtor, "disposable income" is determined by reference to the Chapter 7 means test. Section 707(b)(2)(A)(ii)(I) provides, in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [IRS] for the area in which the debtor resides . . . .

---

[1] The vehicle operating expense, allowed on Line 27 of the means test form and the vehicle ownership expense, allowed on Lines 28 and 29, are separate.

[2] If a debtor's non-filing spouse has income, that portion of the spouse's income not dedicated to payment of household expenses is deducted from the debtor's current monthly income. This deduction is taken on Line 19 of Form 22C as a "marital adjustment" for amounts "not regularly contributed" to the household expenses and effectively reduces the amount an above-median debtor is required to pay unsecured creditors. Amended Form 22C also increased the amount of the taxes taken as a marital adjustment from $1,276.86 to $2,376.86, reducing the DEBTOR'S annualized current monthly income from $85,274.04 to $72,074.04. To the Court's knowledge, the TRUSTEE'S objection to the amount of taxes claimed by the DEBTOR'S spouse on Line 19a remains unresolved.

3

11 U.S.C. § 707(b)(2)(A)(ii)(I). The national and local expense standards are reflected in tables prepared by the Internal Revenue Service (IRS).[3] The National Standards are a series of tables which contain five expense categories for food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. The Local Standards provide expense amounts for housing and utilities, and transportation. Transportation expenses are broken down into ownership and operating costs. A debtor who does not own a vehicle is entitled to claim an allowance for public transportation. A debtor or married debtors filing jointly are permitted to take an allowance to cover the cost of operating one or two vehicles. The "Ownership Costs" table provides allowed expenses for the debtor's "first car" and "second car."

The National and Local Standards are part of the Collection Financial Standards used by the IRS to determine a taxpayer's ability to pay delinquent taxes. Those amounts serve as caps; taxpayers are allowed the lesser of the Standard amount or the actual expense. Considerable discretion is allotted to revenue officers in the collection of taxes. The Internal Revenue Manual (IRM), an internal document developed to assist IRS agents, provides in its overview of the Guidelines for Working Collection Cases, as follows:

> Collection cases involve a variety of unique and challenging situations. Revenue officers . . . meet face-to-face with individual and business taxpayers to help them resolve their tax issues. [They] investigate

---

[3] The IRS National Standards and Local Standards referenced in Section 707(b)(2)(A)(ii)(I) are accessible from the Collection Financial Standards at www.irs.gov/individuals/article/0,,id=96543,00.html. That document contains a disclaimer that the Standards on the IRS website are intended to be used for IRS purposes only and a link is provided to the website for the U.S. Trustee Program for use in calculating expenses for bankruptcy purposes. The tables are not identical. It suffices here to say that the "bankruptcy" tables, though containing the same expenses as the IRS tables, split the applicable IRS housing allowances into mortgage and nonmortgage expenses, in order to avoid "double counting" of expenses which would result from the separate allowance of payments on secured debts. *See* 6 COLLIER ON BANKRUPTCY, ¶ 707.04[3][c][i](Alan N. Resnick & Henry J. Sommer eds., 16th ed.). As a result, reference to the IRS Standards, for bankruptcy purposes, means the Standards as set forth on the U.S. Trustee website, although the reference is made simply to the "IRS Standards." The tables setting forth the Local Standards for Transportation are identical.

the unique facts of each case in order to apply the right treatment to resolve the taxpayer's situation, including appropriate enforcement action, when necessary. Internal Revenue Manual 5.1.1.1 www.irs.gov/irm/part5/irm_05-110001-001.html.

In addition to the National and Local Standards, the IRS has promulgated guidelines, set forth in a Financial Analysis Handbook, also a part of the IRM, which further explain the standards.[4]  The IRM suggests that deviation from the standards set forth in the tables is permitted if warranted by the taxpayer's individual facts and circumstances.  Prior to the Supreme Court's decision in *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), a number of courts had referred to the IRM and the Collection Financial Standards to determine whether a debtor was allowed to take certain expenses under the means test analysis.

In *Ransom*, decided on January 11, 2011, the Court resolved a split among the federal courts of appeal, holding that a debtor must actually have a car ownership expense, either a loan or a lease payment, in order to take an ownership expense deduction when calculating monthly disposable income for the means test.  The Court's ruling was premised on the language, context and purpose of the governing statute.  First, the Court interpreted the disputatious phrase "the debtor's applicable expenses" to mean the expense amounts applicable to each particular debtor as specified under the National Standards and Local Standards.[5]  The Court reasoned that a debtor who does not make loan or lease payments may not take the ownership deduction, as it is not "applicable to the debtor"

---

[4]The Financial Analysis Handbook is contained in Section 1, Chapter 15, Financial Analysis of Part 5, Collection Process of the IRM.

[5]Other courts had interpreted "applicable" to mean categorically matching the debtor's location and status against the IRS Standards without individualized inquiry and had permitted an ownership cost to be taken as a deduction even if the debtor's vehicle was unencumbered. *In re Washburn*, 579 F.3d 934 (8th Cir. 2009); *In re Tate*, 571 F.3d 423 (5th Cir. 2009), *In re Ross-Tousey*, 549 F.3d 1148 (7th Cir. 2008).

5

because that type of expense will not be incurred during the term of the plan. Examining the statutory context, the Court looked to Chapter 13's definition of disposable income as current monthly income less amounts "reasonably necessary to be expended," noting that the granting of an allowance to cover an expense that was not actually being incurred, could hardly be considered to be "reasonably necessary." Finally, the Court determined that its interpretation reflecting the debtor's actual financial circumstances furthered the purpose of ensuring that debtors "repay creditors the maximum they can afford." 131 S.Ct. at 725.

Of importance here is part II of the Court's opinion, where it addressed the role of the Collection Financial Standards, stating:

> Although the [Bankruptcy Code] does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards; after all, the IRS uses those tables for a similar purpose – to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language. But here, the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion that, under the statute, a debtor seeking to claim this deduction must make some loan or lease payments.

131 S.Ct. at 726. Clarifying the majority's position that the Bankruptcy Code neither incorporates nor imports the Collection Financial Standards, Justice Kagan noted that to the extent the IRS's view offers persuasive insight into the understanding of the Local or National Standards, consideration may be appropriate. In response to Justice Scalia's dissent, however, Justice Kagan took pains to emphasize that any reference to the Collection Financial Standards would be informational only since the Standards are not controlling. 131 S.Ct. at 726 n.7.

The DEBTOR'S argument in support of her claim that she is entitled to the additional operating expense is based on a convoluted analysis, with a misreading of the 2005-2008 Committee Notes that accompany Form 22C. She places principal reliance on the Statement of the U.S. Trustee Program's Position on Legal Issues Arising Under the Chapter 13 Disposable Income Test (hereafter the "UST Program's Position"), which implements certain of the IRS guidelines for determining a taxpayer's allowable expenses. At issue here is the "additional operating expense," which is provided for in the IRM, as follows:

> 3. Ownership Expenses - Expenses are allowed for purchase or lease of a vehicle. Taxpayers will be allowed the local standard or the amount actually paid, whichever is less, unless the taxpayer provides documentation to verify and substantiate that the higher expenses are necessary. Generally, auto loan or lease payments will not continue as allowed expenses after the terms of the loan/lease have been satisfied. However, depending on the age or condition of the vehicle, the complete disallowance of the ownership expense may result in a transportation expense allowance that does not adequately meet the necessary expenses of the taxpayer. See paragraph (5) below for the definition and allowances of an older vehicle.
> * * *
> 5. In situations where the taxpayer has a vehicle that is currently over six years old or has reported mileage of 75,000 miles or more, an additional monthly operating expense of $200 will generally be allowed per vehicle.

IRM Section 5.8.5.20.3 (3) and (5). The UST Program's Position limits the allowance to debtors located outside the Fifth, Seventh and Eighth Circuits, based upon the courts' pre-*Ransom* rulings that a debtor may not claim a vehicle ownership expense if the debtor does not have a secured loan or a lease on the vehicle.[6] The DEBTOR predicts that post-*Ransom*, the UST'S policy of allowing an additional operating expense will be extended to all debtors.

---

[6]The statement is published at its website at www.usdoj.gov/ust/bapcap/docs/Disposable_Income_Ch 13_UST_Policies.pdf.

7

The DEBTOR next relies on the following statement made in the Advisory Committee Notes to the means test forms, concerning the deductions under the IRS Standards, with emphasis, as indicated:

> The [means test] forms provide entry lines for each of the specified expense deductions under the IRS standards, *and instructions on the entry lines identify the website of the U.S. Trustee Program, where the relevant IRS allowances can be found.*

The DEBTOR'S apparent assertion, that because the UST, in a separate policy statement available on its website, sanctions the additional operating expense, such expense is transformed to a "relevant IRS allowance" for purposes of the means test deduction, is fatuous. Not only does the DEBTOR misconstrue the Committee Notes, but the underlying proposition is preposterous. While the position of the UST may be entitled to a certain amount of deference on many matters brought before the bankruptcy courts, it is hardly the final word on issues involving the interpretation of the Bankruptcy Code. On the issue that is currently before the Court, the UST Program's Position is to be accorded no interpretational weight at all.[7]

The Court does not consider the issue a difficult one to decide, given the Supreme Court's ruling in *Ransom*, which followed the plain language and the structure of the Bankruptcy Code. The Bankruptcy Code's directive is clear: the debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the . . . Local Standards . . . issued by the Internal Revenue Service." The National and Local Standards

---

[7] Of course, as several courts have indicated, based on the UST Program's Position, Chapter 13 trustees may not raise an objection to the additional operating expense. In many instances the trustee, having objected to an ownership deduction taken with respect to an unencumbered vehicle, is the proponent of the additional operating expense, offering it as a panacea. That is not the case here, however, where the matter is before the Court on the Chapter 13 TRUSTEE'S objection to that claimed expense.

referred to in section 707(b)(2)(A)(ii)(I) are not contained in the Collection Financial Standards, but are separately set forth in a series of tables. The language of the statute is plain and the numbers in the charts are fixed amounts. The National and Local Standards are the key elements in establishing a uniform formula to calculate a debtor's disposable income, supplanting the pre-BAPCPA case-by-case determination with its perceived inconsistencies and unfairness.[8]

*Ransom* precludes resort to the IRS guidelines because the additional operating expense directly contradicts the language of the Bankruptcy Code. The "additional operating expense," as it is sought to be applied to all debtors who own an unencumbered vehicle older than 6 years or having mileage in excess of 75,000 miles, comes in the guise of a supplement to the Local Standards for vehicle operation expense. No reference is made to it in the tables. It is a separate adjustment which is not a part of the Local Standards. *See In re Ford*, 2006 WL 4458358 (Bankr.N.D.Ohio 2006). In actuality, the additional operating expense is a hybrid deduction. Although it is termed an "operating expense" it is only available if the debtor does not have an ownership expense. The allowance of an additional amount as set forth in the IRS guidelines is not a matter of interpretation of the Local Standards for transportation, but one of its revision.[9]

It is easy to understand why, as a practical matter, the old-car deduction does not belong in a Chapter 13 case, based upon the difference in purpose and effect between an IRS agent's negotiation with a delinquent taxpayer and a bankruptcy proceeding. If in

---

[8]*In re Thiel*,--- B.R.----, 2011 WL 799779 (Bankr.D.Idaho 2011).

[9]As the Supreme Court noted in *Ransom*, it is the sole province of the IRS to revise the National and Local Standards, and it does so when it deems necessary. *Ransom*, n.7. Until it does so, or a change is made to the Bankruptcy Code, the amounts set forth in the tables stand without qualification. Allowance of the additional operating expense, in this Court's view, is tantamount to an impermissible judicial amendment.

deciding to accept a lower monthly installment payment, the IRS happens to be overly generous by allowing a taxpayer a cushion of extra funds for unanticipated car repair expenses that the taxpayer ends up not incurring, the IRS suffers little or not at all. It just takes a little longer for the delinquent taxes to be paid. Because of the discharge, however, a bankruptcy case is the one and only opportunity for most creditors to recover on their claims. The stakes are much higher in bankruptcy. While the IRS can afford to be lenient, general unsecured creditors in bankruptcy cannot. Any deviation from the overarching policy that Chapter 13 debtors are to repay creditors the maximum they can afford should be based upon some explicit Congressional direction.[10]

Pleading equity, debtors might assert that they will be put in a financial pickle if their car breaks down during a plan if no additional deduction is allowed. As noted in *Ransom,* however, the Bankruptcy Code already provides a solution. Addressing the debtor's argument that permitting him to claim an ownership deduction was in tune with economic reality because he would likely need to purchase a replacement vehicle during the pendency of the plan, the Court stated:

> In essence, Ransom seeks an emergency cushion for car owners. But nothing in the statute authorizes such a cushion, which all debtors presumably would like in the event some unexpected need arises. And a person who enters bankruptcy without any car at all may also have to buy one during the plan period; yet Ransom concedes that a person in this position cannot claim the ownership deduction. The appropriate way to account for unanticipated expenses like a new vehicle purchase is not to distort the scope of a deduction, but to use the method that the Code provides for all Chapter 13 debtors (and their creditors): modification of the plan in light of changed circumstances. *See* § 1329(a)(1); *see also supra*, at 729.

---

[10]In *Hamilton v. Lanning,* the Supreme Court derided the effect of denying creditors payments that the debtor could easily make as a "senseless result" that Congress could not have intended. 130 S.Ct. at 2475-76.

*Ransom*, 131 S.Ct. at 730.

The Court's comments are equally applicable to the old-car deduction, which would likewise create a "cushion" for future repair costs, not necessarily bearing any relationship to the actual costs which may be incurred. In the same way as a deduction for a potential new car purchase, a deduction for uncertain future repair costs would "distort the scope" of the standard allowances for car expenses.

As part of the projected disposable income equation, the IRS Standards, applied as fixed expense allowances, lead to an inevitable departure from the pre-BAPCPA paradigm of using each debtor's current actual expenses and income to ensure that he pays as much as he can reasonably and actually afford to pay into a Chapter 13 plan. *Ransom*, holding that a debtor who does not have an actual loan or lease payment expense may not take the standardized car-ownership deduction, redirects the focus back toward the debtor's actual financial circumstances. So does *Hamilton v. Lanning,* 2464, 177 L.Ed.2d 23 (2010), holding that the calculation of a Chapter 13 debtor's projected disposable income is not to be dictated by historical numbers that are no longer accurate.[11] Rejection of the old-car deduction, another example of a standardized expense not tied to the debtor's actual budget, is consistent with the Supreme Court's recent bankruptcy decisions.

In rejecting the old-car deduction, this Court respectfully disagrees with the result reached by the court in *In re Baker*, 2011 WL 576851 (Bankr.D.Mont. 2011), the only case which this Court's research discovered on the issue. Interpreting *Ransom* as sanctioning resort to the IRS guidelines, the court, finding the old-car deduction to not be at odds with

---

[11] That an older-car owner will incur an extra expense of $200 per month is not a change that is known or virtually certain at the time of confirmation.

11

any language of the Bankruptcy Code, adhered to its prior ruling in *In re Byrn*, 410 B.R. 642 (Bankr.D.Mont. 2008), which permitted debtors to take the additional operating expenses for vehicles that met the age and mileage criteria.

The DEBTOR also contends that the additional operating expense is allowable under section 707(b)(2)(B), under the "special circumstances" category. Since *Ransom* sanctions consulting the IRS guidelines when those guidelines do not conflict with the Bankruptcy Code, the DEBTOR contends that the additional operating expense does not conflict with either section 707(b)(2)(B) or section 1325(b)(3), and that it may properly be claimed under that provision. The fallacy in the DEBTOR'S argument is obvious. To establish "special circumstances," a debtor must itemize each additional expense, which must be actual and not speculative or hypothetical, provide documentation for such expense, and provide "a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." Section 707(b)(2)(B)(ii). This exception requires a showing that the debtor has "no reasonable alternative." Section 707(b)(2)(B)( i); *Hamilton v. Lanning*, 130 S.Ct. at 2477. Rather than attempt to meet any of these requirements, the DEBTOR simply relies on the Supreme Court's endorsement of the IRS guidelines, in claiming that the additional operating expense, routinely applied by the IRS, is appropriate. This attempt is a proverbial "back door" maneuver. The DEBTOR cannot claim the additional expense through the back door as a "special circumstance" when that expense is barred by way of the front.

Quite apart from this Court's ruling that a debtor is not entitled to claim an additional operating expense for an older or high mileage vehicle, the DEBTOR in this case

would not be entitled to such a claim, even if a contrary result had been reached. Married debtors are only entitled to claim an operating deduction for two vehicles. The DEBTOR properly claims an ownership expense with respect to her first car, the Pontiac G6, that she is retaining and paying for. She is entitled to claim the standard operating expense on that vehicle. Her nonfiling spouse, according to Form 22C, makes monthly payments totaling $650 on a truck and a motorcycle, which vehicles are owned by him individually. No ownership expense is allowed on Form 22C for a second vehicle because the DEBTOR has no ownership interest in either one. The effect, however, is that the amount of the monthly payments made by the DEBTOR'S spouse is deducted from their combined income. In this Court's view, a standard deduction for the operating expenses for the primary vehicle driven by the DEBTOR'S nonfiling spouse may be taken on Line 27 of Form 22C. It is beyond question, however, that an operating expense deduction has been improperly claimed for the unencumbered Beretta, which the DEBTOR admits is inoperable and of negligible value. Implicit in the claiming of an operating expense is that the vehicle is actually driven and that expenses are incurred. After *Ransom*, such an expense cannot be "applicable" if it is not incurred.[12]

For these reasons, the Court holds that the old-car deduction claimed by the DEBTOR is improper and must be denied. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

---

[12] This is not to say in all cases that a vehicle which is inoperable on the date the petition is filed will never qualify for the operating expense. The debtor may establish that the costs to repair the vehicle are within the debtor's budget to make within the near future and that the debtor intends to make the repairs and that the car will be driven as either the first or the second vehicle, as the case may be.

13

###